914 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William Eugene TOLLIVER, Plaintiff-Appellant,
v.
Lee M. THOMAS, Administrator, U.S. Environmental Protection
Agency, Defendant-Appellee.
 No. 89-3512.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1990.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and SILER, District Judge.*
 PER CURIAM.
 
 
 1
 This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e. Plaintiff-Appellant William E. Tolliver, a black man who was employed for approximately 34 years by the federal government, contends that he was constructively discharged because of his race and sex. The case was tried before a magistrate, who entered a final judgment in favor of the government. We agree with the magistrate's conclusion that the plaintiff failed to prove impermissible discrimination or constructive discharge, and we shall affirm the judgment.
 
 
 2
 The relevant facts are essentially undisputed. Mr. Tolliver began his career with the federal government in 1952. In 1960 he joined the Public Health Service as a physical science technician. His unit was transferred to the newly-created Environmental Protection Agency in 1970. Mr. Tolliver became an EPA equal employment opportunity officer in 1972. His position was transferred to the EPA's Office of Administration in 1975, and to EPA's Office of Civil Rights in 1976. His supervisor in 1975-1976 was William Benoit, a white male.
 
 
 3
 Between 1983 and 1986, while working as an area civil rights director in Cincinnati, Mr. Tolliver was supervised first by Nathaniel Scurry, National Director of the EPA Office of Civil Rights, and then by Dwight Doxsey, also in the Office of Civil Rights. Both Mr. Scurry and Mr. Doxsey are black. Both of them gave Mr. Tolliver performance evaluations that were satisfactory or better. Mr. Benoit never evaluated Mr. Tolliver's performance.
 
 
 4
 Mr. Tolliver submitted his retirement papers on July 29, 1986. His salary at that time was approximately $43,000 per year. He retired with all the benefits to which he was entitled after 34 years of government service, and he currently receives an annuity of $1,980 per month.
 
 
 5
 Mr. Tolliver contends that the impermissible discrimination of which he complains began in 1975, when Mr. Benoit refused to provide him necessary assistance and caused general dissension among the staff. He also contends that Mr. Benoit defamed him. Mr. Tolliver further asserts that Nathaniel Scurry attempted to defeat EEO goals and failed to respond to Mr. Tolliver's attempted contacts with him. He claims that Benoit and Scurry cut him off because of racial or sexual bias, as shown by the fact that they chose to involve white and black females in their decision-making processes in preference to himself. The hostile atmosphere thus created, Mr. Tolliver alleges, ultimately led to his resignation. He was replaced by a black man, Arthur Turner, whom he had brought into the organization as an equal employment opportunity officer and who had been his assistant for some years.
 
 
 6
 Mr. Tolliver brought suit in federal court against four people: the Administrator of the EPA, a personnel officer named Watkins, and Messrs. Benoit and Scurry. The magistrate recommended dismissal of the claims against everyone but the Administrator because 42 U.S.C. Secs. 2000e-16 and 2000e-5 provide that the sole defendant in a federal discrimination suit shall be the head of the agency. See Hancock v. Egger, 848 F.2d 87, 89 (6th Cir.1988). The magistrate also recommended dismissal of various damage claims on the ground that Mr. Tolliver's sole cause of action arose under Title VII, which Congress intended to be the exclusive remedy for federal employment discrimination. See Brown v. General Services Administration, 425 U.S. 820, 835 (1976). The magistrate's recommendations were adopted by the district court.
 
 
 7
 By consent of the parties, the Title VII case against the Administrator was tried to the magistrate, with a right of direct appeal to this court. Concluding that Mr. Tolliver had failed to establish a prima facie case of impermissible discrimination or constructive discharge, the magistrate entered judgment for the defendant following the presentation of the plaintiff's case-in-chief.
 
 
 8
 Mr. Tolliver contends on appeal that he did establish a prima facie case; that in any event he was denied a full and fair opportunity to present his case; and that the magistrate erred in refusing to grant him a jury trial. We find none of these contentions persuasive.
 
 
 9
 As to the question of whether a prima facie case of impermissible discrimination was presented, the magistrate noted that: (1) the job as an EEO supervisor is stressful; (2) many organizations resist changes, including attempts to move toward racial equality; (3) there is evidence that Mr. Tolliver's authority became gradually undermined and people chose to deal with his assistant, Mr. Turner; (4) there is evidence that others were given work he expected to get; (5) it appears that Mr. Scurry lost confidence in him and made his job more difficult; (6) he did not receive full support from his supervisors, and this affected his physical and mental health; and (7) perceiving little chance of advancement to a position in Washington, D.C., he resigned.
 
 
 10
 The magistrate was correct in concluding that no reasonable inference of race or sex discrimination could be drawn from the facts presented. Both Mr. Scurry and his successor as Mr. Tolliver's supervisor, Mr. Doxsey, are themselves black. If they and others chose to deal with Mr. Tolliver's black assistant, rather than with Mr. Tolliver himself, their conduct is not likely to have been the result of racial discrimination. Similarly, the alleged favoritism toward female area directors by persons of the opposite sex is not likely to have been the result of sex discrimination.
 
 
 11
 To prove his claim of constructive discharge, Mr. Tolliver had to show that his working environment was so bad that a reasonable person would have felt compelled to resign. See Yates v. AVCO Corp., 819 F.2d 630, 636-37 (6th Cir.1987). He made no such showing. His work evaluations "exceeded expectations" on a consistent basis, and he was never in danger of losing his job. His situation was not shown to have been intolerable, unpleasant though it may have been, and it was not shown to have been created by conduct that is proscribed by law.
 
 
 12
 Mr. Tolliver was given every opportunity to present whatever case he had. Six witnesses took the stand--including Mr. Tolliver himself--and the magistrate was told that there were no other witnesses. Mr. Tolliver now says that certain EPA employees refused to testify on his behalf, but there is nothing in the record to support this claim. Mr. Tolliver has not shown that he was denied his right to compel the attendance of witnesses by subpoena.
 
 
 13
 As to the jury trial question, finally, the Supreme Court has held that there is no right to trial by jury in Title VII cases. See Lehman v. Nakshian, 453 U.S. 156, 164 (1981).
 
 
 14
 The judgment is AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation